# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Motorola Cellular Phone, Model No. XT1921-2,<br>IMEI 351840091105746 | )<br>)<br>)   Case No.  **19MJ3627**<br>)<br>) |

FILED
AUG 26 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT A

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Controlled Substances; |
| 21 U.S.C. § 963 | Conspiracy to Import Controlled Substances |

The application is based on these facts:

SEE AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

HSI Special Agent Ryan L. Beckhelm
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/26/19

_____
*Judge's signature*

City and state: San Diego, CA        Honorable Bernard G. Skomal, U.S. Magistrate Judge
*Printed name and title*

# Attachment A

## *Item to be Searched*

The item to be searched is as follows:

> Motorola Cellular Phone
> Model No. XT1921-2
> IMEI 351840091105746
> (**"Target Device"**)

The **Target Device** is currently in the possession of the Department of Homeland Security and is presently stored at 2255 Niels Bohr Ct. San Diego, CA 92154

## Attachment B

### *Items to be Seized*

Authorization to search the cellular/mobile telephone described in Attachment A (the "**Target Device**") includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephones and tablet for evidence described below. The seizure and search of the cellular/mobile telephones and tablet shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephones and tablet will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, from April 1, 2019 up to and including June 1, 2019:

a. tending to indicate efforts to import methamphetamine, heroin, fentanyl, or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, heroin, fentanyl, or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, heroin, fentanyl, or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, cocaine, heroin, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

      a. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above,

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Ryan L. Beckhelm, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A ("**Target Device**"), and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952, 960, and 963, as further described in Attachment B:

> Motorola Cellular Phone
> Model No. XT1921-2
> IMEI 351840091105746
> ("**Target Device**")

This search warrant supports an investigation and prosecution of Jose Ontiveros Molina ("ONTIVEROS"), who is charged with committing violations of 21 U.S.C. §§ 952 and 960. A factual explanation supporting probable cause follows.

2. Officers with the Department of Homeland Security, United States Customs and Border Protection ("CBP"), seized the **Target Device** from ONTIVEROS on May 31, 2019, when he was arrested at the Otay Mesa, California, Port of Entry ("POE") for drug smuggling, in violation of 21 U.S.C. §§ 952 and 960. Specifically, ONTIVEROS was found in possession of approximately 12.38 kilograms of methamphetamine, 6.14 kilograms of heroin, and 1.1 kilograms of fentanyl hidden in the vehicle that he was driving. The **Target Device** is currently in the possession of the Department of Homeland Security and is presently stored at 2255 Niels Bohr Ct, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to investigators about this investigation. It contains only those facts

believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, conversations with other investigators experienced in the area of drug investigations, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## TRAINING AND EXPERIENCE

5. I am a Special Agent (SA) of the United States Department of Homeland Security, Homeland Security Investigations (HSI) and have been so employed for approximately 11 years. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer since April of 2007. I am authorized by Rule 41(a), Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants pursuant to Rule 4(a) and (c)(1), Federal Rules of Criminal Procedure.

6. I am currently assigned to the San Diego Narcotics Enforcement Team (SDNET), which is a multi-jurisdictional task force comprised of local, state and federal law enforcement tasked with the investigation of major narcotics traffickers in and around San Diego County.

7. I have the following relevant training, qualifications, expertise, experience and background. I have been assigned to SDNET for three months, and have worked as a narcotics agent for approximately eleven years. During my career I have made more than 100 arrests for various narcotics violations for both state and federal charges. I also have been involved in hundreds of narcotic investigations in a supporting role. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement of illegal entry of illegal narcotics into the United States; the smuggling of illegal narcotics into the United States; the transportation and possession of illegal narcotics within the United States. I have worked closely with special agents and investigators possessing advanced experience in the field of narcotics trafficking, money laundering focusing on the money laundering of drug trafficking proceeds in the form of bulk cash

smuggling, wire transfers, transacted through the utilization of money remitters, money exchanges transacted by DTO subjects and have conferred with special agents and investigators possessing extensive experience on this subject. I am familiar with the common methods employed by individuals involved in the trafficking of narcotics and narcotic manufacturing.

8. Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, and tablets, to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, maps and directions, and phone numbers of co-conspirators.

9. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics and human trafficking investigations, I am also aware that:

    a. Drug traffickers will use digital devices like cellular telephones, tablets, and laptop computers because they are mobile, and they have instant access to telephone calls, text, web, email, and voice messages;

    b. Drug traffickers will use digital devices like cellular telephones, tablets, and laptop computers because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    c. Drug traffickers and their accomplices will use digital devices like cellular telephones, tablets, and laptop computers because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d. Drug traffickers will use digital devices like cellular telephones, tablets, and laptop computers to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

    e. Drug traffickers will use digital devices like cellular telephones, tablets, and laptop computers to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

    f. The use of digital devices like cellular telephones, tablets, and laptop computers by traffickers tends to generate evidence that is stored on the digital devices, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data; and

    g. Individuals involved in the illegal possession and acquisition of drug trafficking often utilize digital devices like cellular telephones, tablets, and laptop computers with photograph and video capabilities to take and send photographs and videos of other members of criminal organizations, drugs, criminal proceeds, and assets purchased with criminal proceeds.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a. tending to indicate efforts to import methamphetamine, heroin, fentanyl, or some other federally controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, heroin, fentanyl, or some other federally controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, heroin, fentanyl, or some other federally controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, cocaine, heroin, or some other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11. Subscriber Identity Module ("SIM") Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

12. Furthermore, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that drug conspiracies often require detailed and intricate planning to successfully evade detection. Consequently, drug conspiracies often involve planning and coordination for

several months—this planning often occurs through mobile telephones. Additionally, based on my training and experience, and conversations with other law enforcement officers who investigate drug smuggling and trafficking, I know that coconspirators are often unaware when a fellow coconspirator has been arrested and will attempt to communicate with that coconspirator via mobile telephone after his or her arrest to determine the whereabouts of drugs that are being transported.

## FACTS IN SUPPORT OF PROBABLE CAUSE

13. According to the report of CBP Officer J. Corey, on May 31, 2019, Officer Corey was processing traffic at primary lane 5 at the Otay Mesa POE. At about 2:25 a.m., ONTIVEROS drove into Officer Corey's inspection lane, driving a 2003 white Ford F-150 truck with California license plate 8Y57692. ONTIVEROS, the driver and sole occupant of the Ford F-150, presented his permanent-residence card and told Officer Corey that he was headed to Lakeside. In response to Officer Corey's queries, ONTIVEROS also twice said he did not have anything to declare. Separately, I have confirmed that ONTIVEROS was registered owner of the Ford F-150.

14. Per Officer Corey's report, at the time ONTIVEROS provided his two negative customs declarations, CBP Officer Murray approached the Ford F-150 from the rear, with his K-9 Unit. The K-9 alerted to the spare tire of the Ford F-150. At that point, ONTIVEROS was escorted to the security office at the POE, and the Ford F-150 was taken for inspection in the secondary lot.

15. Per the report of Officer D. Murray, he was performing roving inspections in the vehicle primary lanes when his K-9 Unit alerted on the Ford F-150. The spare tire was mounted to the under-carriage of the Ford F-150. Officer Murray used a screwdriver to tap the spare tire, and found that it was unusually solid. He then informed Officer Corey of his observation. (I infer that upon hearing Officer Murray's observation, Officer Corey had ONTIVEROS escorted to the security office and the Ford F-150 taken to the secondary lot.)

16. Per the report of CBP Officer G. Aguiar, Officer Aguiar was asked to screen the Ford F-150 in the "Z-Portal" X-Ray machine. Officer Aguiar screened the Ford F-150

and observed anomalies inside the spare tire.

17. Per the report of CBP Officer A. Parache, after Officer Aguilar observed the anomalies in the spare tire, Officer Parache was assigned to conduct a physical inspection. As a master mechanic was already on site at the POE, the master mechanic used a tool to lower the spare tire from the undercarriage of the Ford F-150 and unhook it. The master mechanic opened the spare tire, and Officer Parache found packages inside. Officer Parache found 23 packages wrapped in plastic and laundry detergent, which tested positive for methamphetamine; these packages weighed 12.38 kilograms. He found 5 packages of a substance inside a container wrapped in plastic and laundry determined, which tested positive for heroin; these packages weighed 6.14 kilograms. He found 1 package wrapped in plastic and laundry detergent, which tested positive for fentanyl; this package weighed 1.16 kilograms. And, he found a package of pills, substance undetermined, which weighed 1.60 kilograms.

18. Per Officer Parache's report, Officer Parache found the same tool that the master mechanic used to lower the tire; the tool was under the hood of the Ford F-150.

19. ONTIVEROS was placed under arrest for violation of 21 U.S.C. §§ 952 and 960. According to Officer Parache's report, the **Target Device** was seized, along with the Ford F-150 and the substances. (The CBP Officers' reports do not indicate whether the **Target Device** was seized directly from ONTIVEROS or from the Ford F-150; however, in my training and experience, I know that when a person is taken to the security office and their car searched, CBP will gather all the personal effects from the person and secure them. If the person is arrested, those items are seized.)

20. Given the facts surrounding the arrest of ONTIVEROS, and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit that there is probable cause to believe that information relevant to the smuggling activity of ONTIVEROS will be found in the **Target Device**. Such evidence, which could be in the form of communications, records, data (including but not limited to emails, text messages, other social messaging

applications), photographs, audio files, videos, or location data:

    a. tending to indicate efforts to import methamphetamine, heroin, fentanyl, or some other federally controlled substance from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, heroin, fentanyl or some other federally controlled substance from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, heroin, fentanyl or some other federally controlled substance from Mexico into the United States;

    d. tending to identify travel to or presence at locations involved in the importation of methamphetamine, heroin, fentanyl or some other federally controlled substance from Mexico into the United States;

    e. tending to identify the movement of proceeds associated with the trafficking of methamphetamine, heroin, fentanyl or some other federally controlled substance that was imported from Mexico into the United States;

    f. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

    g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

21. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, there is probable cause to believe that information relevant to the drug smuggling and trafficking activities of ONTIVEROS, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Device**. For the reasons set forth above, I request permission

to search the **Target Device** for items listed in Attachment B for the time period from April 1, 2019, up to and including June 1, 2019, which was the day following ONTIVEROS's arrest.

## METHODOLOGY

22. It is not possible to determine, merely by knowing a cellular telephone's or tablet's make, model and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their devices—both phones and tablets—over the internet and remotely destroy all of the data contained on the devices. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones and tablets do not have hard drives or hard-drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models, and some tablets, using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and any associated memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25. At the time of ONTIVEROS's entry to the United States, investigators conducted a forensic download of the **Target Device**. I have not relied on any information obtained from that forensic download in this warrant application. Going forward, the Government will rely only on reviews of the **Target Device** authorized by this warrant (and any others the Government obtains).

## CONCLUSION

26. Based on all of the facts and circumstances described above, I believe probable cause exists to conclude that ONTIVEROS used the **Target Device** to facilitate violations of Title 21, United States Code, Sections 952, 960, and 963.

27. Because the **Target Device** was promptly seized following the arrest of ONTIVEROS at the Otay Mesa POE, there is probable cause to believe that evidence of the smuggling offense committed by him continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from April 1, 2019, up to and including June 1, 2019.

28. WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital

///
///
///

evidence recovery, to search the **Target Device**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

RYAN L. BECKHELM
Homeland Security Investigations Special Agent
Department of Homeland Security

Subscribed and sworn to before me on this _26_ day of August, 2019.

THE HON. BERNARD G. SKOMAL
United States Magistrate Judge